

# CITY OF HARTFORD



**HARTFORD POLICE DEPARTMENT**
50 Jennings Road, Hartford, Connecticut 06120
Telephone: (860) 527-6300

## COUNCIL - MANAGER GOVERNMENT

**ROBERT S. RUDEWICZ**
Acting Chief of Police

November 11, 2000

Officer Daryel McCrorey
436 Connecticut Avenue
Newington, CT 06111

On November 10, 2000, you were arrested by the Hartford Police Department on an arrest warrant charging you with SEXUAL ASSAULT IN THE FIRST DEGREE, CGS 53a-70 (CLASS B FELONY).

The conduct that led to the arrest causes me grave concern as to your ability to perform your job and reflects negativity on the City as your employer.

Due to the nature of the circumstances leading to your arrest, I have no option but to suspend you from duty without pay pending the outcome of this matter through Police Department administrative procedures.

You are to surrender your Hartford Police Department identification card, Hartford Police Department handgun with magazines and ammunition, Hartford Police Department badges (breast and hat), POST certification card and key card to your commander prior to the start of your suspension.

The Department Advocate will make himself available to you or your counsel to discuss these charges and provide additional information which you feel is necessary in the preparation of your defense.

If you wish to be represented by Union Counsel, you should make every effort to notify union officials as soon as possible, so that they may arrange for this representation.

Very truly yours,

*Acting Assistant Chief of Police*

ROBERT S. RUDEWICZ
ACTING CHIEF OF POLICE

CC:  Michael Wood, President, Hartford Police Union
     Dorothy Shirley, Personnel Unit
     File

C-5



1    think you said Sergeant Morin, maybe I wrote that -- Sergeant

2    Morin the morning supervisor?

3        A    I can't recall because at the time, you know, it was

4    like we had like a new class of supervisors that came in.  So,

5    it was like, you would see the supervisor in the morning but

6    you really kinda didn't know who would be the next one the

7    next day.

8        Q    Okay, and so you had a number of supervisors over the

9    course of time from '99 to November of 2000?

10       A    Yes, sir.

11       Q    Do you recall the last supervisor you had in the year

12   2000?

13       A    I'm trying to think.  I would say Sergeant Morin,

14   Sergeant Sansom.

15       Q    Sergeant Sansom?

16       A    I believe, as I recall.

17       Q    And that would be supervisor in the morning?

18       A    Yes, sir.

19              ATTORNEY SPEARS:  I want to have a document

20          marked.  First let me get a copy.  I'm sorry.

21              (Whereupon I marked Plaintiff's Exhibit 1)

22   BY ATTORNEY SPEARS:

23       Q    And what area were you patrolling in November of

24   2000?

25       A    The northend.

11

1    Q    The northend.  Would that include Boothbay Street?

2    A    Yes, sir.

3    Q    And how long have you been patrolling that area from

4    the year 2000, November, backwards?  How long had you been

5    patrolling that particular area?

6    A    Well, I was on AB relief.  As the officer was off, I

7    filled his car, so, I think maybe several times.

8    Q    So, you didn't do this as a regular assignment?

9    A    No, sir.

10   Q    So, you would -- is it fair to say that you would be

11   assigned to different parts of the city on different dates?

12   A    No, sir. I was relief officer in the north.  As there

13   was availability of a car, that's where I fit in.

14   Q    And would your patrol area have stayed the same no

15   matter whose car you were filling in?

16   A    It's a possibility.  It all depends on where you fall

17   in on relief.

18   Q    Is the northend divided into different sections?

19   A    Yes, sir.

20   Q    And what sections are the northend divided into?  How

21   many sections?

22   A    That is -- that will be a difficult question to ask

23   because there was a time I was there -- we got a new car plan

24   so, I can't tell you.  They switched.  We had different cars

25   at the time, different areas but then there was a new car plan

17

1    Q    Who did you report it to?

2    A    Sergeant Sutton.

3    Q    And when the investigation was done in your

4    discipline, was Sergeant Sutton spoken to about whether you

5    had reported the radio?

6    A    I cannot recall.

7    Q    Did you ask Sergeant Sutton to tell the individuals

8    that were investigating you that you had reported the radio

9    stolen?

10    A    No, I didn't, sir.

11    Q    Do you know where Sergeant Sutton is today?

12    A    No, I don't, sir.

13    Q    And what was the discipline that was given to you?

14    A    The discipline that I received was I got two calendar

15    days.

16    Q    What is that?

17    A    Street calendar days.

18    Q    And were you required to pay for the radio?

19    A    No, sir.

20    Q    Prior to this particular discipline, had you ever

21    received discipline before?

22    A    I can't recall offhand.

23    Q    You're not sure whether you did or you didn't?

24    A    Well, I can't remember exactly what for.

25    Q    You did get disciplined for something?

18

1    A    It was possible, yes.

2    Q    Do you recall what the discipline was?

3    A    I may have received oral reprimand.

4    Q    Do you recall?

5    A    No, I don't know.

6    Q    You don't remember what for?

7    A    No, not unless you bring an incident to me.

8    Q    Okay.  After this incident, had you ever been

9    reprimanded?

10    A    It's possible but for exactly -- I mean, if you

11    mention an incident, I could tell you what for but to be

12    exactly, what exactly for, I couldn't tell you.

13    Q    And so you recall what the discipline was?

14    A    I'm not exactly sure.  I mean, if you mention, I

15    could recall from there.

16    Q    I'm just asking questions.  My question is, do you

17    recall what your discipline that you received was after being

18    disciplined for the radio, whether it was a reprimand, whether

19    it was suspension?

20    A    Oh, for the radio?

21    Q    No, I'm saying after the radio.

22    A    After the radio?

23    Q    Yes.

24    A    I received oral reprimand for something.

25    Q    And have you ever received any other discipline than

BY ATTORNEY SPEARS:

Q    And I'm asking what did she mean?

A    I don't know what she meant by that.

Q    I'm asking you what you mean.

A    That's what she said to me.  I said, no, that's not the case.

Q    You didn't understand what she meant by laid up with her.

A    No because we had just gotten to a conversation about she said she needed some money.  So that was the purpose of my visit.

Q    So, you never did lay up with her?

A    On advice of counsel, I can't answer that.

Q    Well, you have no Fifth Amendment privilege at this point.

ATTORNEY MELLEY:  With regard to that issue, there may well be.

ATTORNEY SPEARS:  Then I think we should call the judge and get it cleared up because I can't go much further without getting that cleared up.  I think we should call him.  Let's call him.  We need to clear that up.

ATTORNEY MELLEY:  Just so we are clear as to what we are clearing up.

ATTORNEY SPEARS:  All right, go ahead.  Let's do

25

1    that.  Okay.  All we are clearing up, he took the

2    Fifth on one of my questions and I'm clearing up

3    whether or not he can appropriately take the Fifth

4    and you're going to argue as to why he should be

5    able and I'm going to be able to argue.

6        ATTORNEY MELLEY:  Let me tell you the question,

7    as I understood it, and especially as I understand

8    the witness' response, is whether or not he had any

9    sexual relationship with the alleged victim on prior

10    occasions.

11        ATTORNEY SPEARS:  Right.

12        ATTORNEY MELLEY:  And the record, as I

13    understand it, has two components. One is the

14    affidavit he gives to -- I don't know how it's given

15    but it's signed before Attorney Moniz at the time of

16    his sentencing in the last week.  And at the same

17    time there are two statements that the witness gave

18    to the investigator under penalty of perjury within

19    the IAD and on the face of those two statements

20    there is a conflict and there is well a potential of

21    a charge of perjury regarding that issue of a prior

22    sexual relationship.

23        ATTORNEY SPEARS:  Then that makes it all the

24    more important to resolve it at this point because

25    we are not going to get a trial and have to resolve

26

1      that issue.

2           ATTORNEY MELLEY:  Well, I guess the question is

3      whether you intend to push him on that.

4           ATTORNEY SPEARS:  Definitely.  Definitely.

5           ATTORNEY MELLEY:  Clearly there is two different

6      statements out there, so, I think to the extent he's

7      going to be asked any questions on that point --

8           ATTORNEY SPEARS:  Let me just speak to -- get

9      Judge Squatrito's clerk.

10          ATTORNEY MELLEY:  Nancy.

11          ATTORNEY SPEARS:  Let's put on the record the

12     question. Have you ever had a prior sexual

13     relationship with Jane Doe.

14          ATTORNEY MELLEY:  And that's the question at

15     issue regarding the witness' assertion of his Fifth

16     Amendment right of self-incrimination.

17          ATTORNEY SPEARS:  The judge is not available.

18     None of his staff is there.  It's my feeling we

19     should adjourn the deposition and reschedule it and

20     take it up on a motion to compel with the judge and

21     then just come back and finish.

22          ATTORNEY MELLEY:  Before I say anything, let me

23     talk to my client in response.

24          ATTORNEY SPEARS:  Do you want me to leave?

25          (Recess was taken).

27

1        (After recess).

2        ATTORNEY MELLEY:  I understand your position.  I

3        respect where you're coming from.  I think that the

4        framework of the issue was obvious beforehand and

5        there are other issues that I would expect you to

6        want to cover.  He's available for any of those

7        other areas that you want to cover now.

8        ATTORNEY SPEARS:  I just feel like that's the

9        heart of the case and I think it will end up --

10       we'll keep going over certain areas duplicative.  If

11       I do any of those other areas, I think we will just

12       go over them again.  Let's ask a few more questions.

13       (Discussion off the record).

14       (Back on the record)

15  BY ATTORNEY SPEARS:

16       Q    Have you ever gone to the victim's home in an attempt

17  to get her to have sexual relationships with you -- relations

18  with you?

19       A    On behalf of counsel --

20       Q    On behalf of counsel?

21       A    On behalf of counsel, I'm not going to answer that

22  question.

23       Q    Okay, is it true that while you were at the Hartford

24  Police Department, your supervisor never kept track of your

25  comings and goings?





UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JANE DOE                              :    CIVIL ACTION
        Plaintiff                     :    NO. 3:01CV 278 (DJS)
                                      :
V.                                    :
                                      :
                                      :
CITY OF HARTFORD, ET AL               :
        Defendants                    :    JANUARY 21, 2002

## DEFENDANT CITY OF HARTFORD'S RESPONSES TO PLAINTIFF'S INTERROGATORIES AND REQUESTS FOR PRODUCTION

Pursuant to F.R.C.P. 33 and 34, the defendant, City of Hartford, responds to the plaintiff's Interrogatories and Requests for Production, dated July 16, 2001, as follows.

1.      Please identify the chain of command of the Hartford Police Department on November 8, 2000, from the Chief of Police down to Daryel McCrorey.

**ANSWER:    Please see organizational chart of the Hartford Police Department, attached hereto.**

2.      Please identify all Hartford Police Department employees and/or agents who participated in the investigation of the loss of Daryel McCrorey's police radio and/or the decision to suspend Daryel McCrorey as a result of the loss of the police radio and/or his filing a false police report of the incident?

**ANSWER:    Lt. Nancy McClure; Captain Mark Edwards; Acting Chief Deborah Barrows; Captain Kevin Jones.**

3.      Please state whether Daryel McCrorey filed a false police report regarding the loss of his police radio?

One Goodwin Square
225 Asylum Street
Hartford, CT  06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

3.     Please state whether Daryel McCrorey filed a false police report

regarding the loss of his police radio?

**ANSWER:     Officer McCrorey was charged administratively with a violation of the
Code of Conduct regarding the contents of the report he submitted.**

4.     If the answer to the preceding interrogatory was in the affirmative please

state why Daryel McCrorey was not arrested and/or fired for filing the subject police

report?

**ANSWER:     The matter was handled administratively as a violation of the Code
of Conduct and in accordance with the recommended punishment.**

5.     Please state whether Daryel McCrorey was investigated by the Hartford

Police Department for sexual assault by any other women, including but not limited to

claims of sexual assault made by alleged prostitute(s)?

**ANSWER:     No.**

6.     If the answer to the preceding interrogatory was in the affirmative, please

state the name and last known address and telephone number of any and all women

who have claimed that Daryel McCorey had sexually assaulted them?

**ANSWER:     Not Applicable.**

7.     Please state whether Daryel McCrorey has any disciplinary action (s)

pending against him by the Hartford Police Department?

**ANSWER:     Any disciplinary action is being held in abeyance pending the
outcome of the criminal charges which are the subject for this
particular action.**

One Goodwin Square
225 Asylum Street
Hartford, CT  06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

8.    If the answer to the preceding interrogatory is in the affirmative, please identify the misconduct for which disciplinary action is pending, and describe the status of any disciplinary action?

**ANSWER:    See response to Interrogatory No. 7.**

9.    Please identify all training which Daryel McCrorey has received at the Hartford Police Department starting with his training at the academy to the present?

**ANSWER:    See academic training schedule, attached hereto.**

10.    Please state each position held by Daryel McCrorey while employed by the Hartford Police Department?

**ANSWER:    See personnel orders, attached hereto.**

11.    Please identify whether Daryel McCrorey's missing police radio was ever found?

**ANSWER:    Yes.**

12.    If the answer to preceding interrogatory was in the affirmative, please state he circumstances under which it was found, including whether it was found in the home of a suspected drug dealer, during a search conducted by the Hartford Police Department, and by whom was it found?

**ANSWER:    The radio was located during a narcotics operation conducted at 90½ Brook Street by members of the Hartford Police Department, which is documented under Case No. 98-52149.**

- 3 -

One Goodwin Square
225 Asylum Street
Hartford, CT  06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

13.    Please identify whether Daryel McCrorey was ever investigated regarding

his use of time on the job for personal errands?

**ANSWER:    Daryel McCrorey was reprimanded on several occasions for his
failure to report to work on time.**

14.    If the answer to the preceding interrogatory was in the affirmative please

identify all Hartford Police Department and/or City of Hartford employees who

participated in the investigation and state the results of the investigation?

**ANSWER:    (a)    On November 14, 1995, Officer McCrorey received documented
counseling for arriving 45 minutes late for a private-duty
assignment.  There was no "investigation."**

**(b)    On December 5, 1997, Officer McCrorey received documented
counseling when he arrived at work one hour and 15 minutes
late.  There was no "investigation."**

**(c)    On March 5, 1998, Officer McCrorey was issued a written
reprimand for requesting and obtaining one hour
compensation time when he had insufficient accrued time
available.  There was no "investigation."**

**(d)    On August 19, 1998, Officer McCrorey was issued documented
counseling when he reported for his assignment thirty minutes
late.  There was no "investigation."**

**(e)    On March 9, 1999, Officer McCrorey was issued an oral
reprimand for reporting late for roll call.  There was no
"investigation."**

15.    Please state whether Hartford Police Department Police Officers are

permitted to use there patrol cars to visit people while on duty?

**ANSWER:    Objection pending.**

- 4 -

One Goodwin Square
225 Asylum Street
Hartford, CT  06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

16.    Please identify all City of Hartford policies and procedures, directives, written orders or regulation regarding the use of police department vehicles?

**ANSWER:    Objection pending.**

17.    Please identify all City of Hartford policies, procedures directives, written orders and/or other regulations regarding the filing of all false police reports, including but not limited the penalties for filing false police reports?

**ANSWER:    Please refer to Hartford Police Department Code of Conduct.**

18.    Please identify all City of Hartford policies, orders, directives, procedures, and/or other regulations regarding supervision of officers use of time, by supervisory officers while on the job?

**ANSWER:    Objection pending.  Without waiving said objection, see Policies and Procedures 7-74 (Field Sergeants) and 7-75 (Field Attendants), attached hereto.**

19.    Please state whether Daryel McCrorey, supervisor was given any directives or orders whether in writing or orally regarding supervision of Daryel McCrorey after he was suspended?

**ANSWER:    Objection pending.**

20.    Please state whether officer McCrorey was required to take any remedial training and/or psychiatric counseling after he was suspended?

**ANSWER:    No.**

One Goodwin Square
225 Asylum Street
Hartford, CT  06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

21.    If the answer to the preceding interrogatory was in the affirmative, please state what training and/or counseling Daryel McCrorey received, the name of the person who performed the training and/or counseling and how long the training and/or counseling lasted.

**ANSWER:    Not applicable.**

22.    State the name(s), and address(es) and present location of any person(s) whom the defendant intends to call as an expert witness at trial, and state the subject matter on which each expert is expected to testify, the substance of the facts and opinions to which the expert is expected to testify; and a summary of the grounds for each opinion of each expert?

**ANSWER:    Defendant is uncertain at this time, however, reserves the right to identify expert witnesses at a later date.**

23.    State the names, addresses and telephone number(s) of all witnesses known to you or your attorney who have knowledge concerning the incident alleged in the complaint?

**ANSWER:    Objection pending.**

24.    State whether or not you, or your representative other than counsel obtained any statement or statements, in writing or otherwise recorded, from any person or persons, regarding the incident alleged in the complaint?

**ANSWER:    Objection pending.**

One Goodwin Square
225 Asylum Street
Hartford, CT  06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

B.      Pursuant to Rule 34 of the F.R.C.P., the Plaintiff request that the Defendant, City

of Hartford produce:

1.      Copy of his Personnel File with the City of Hartford?

**ANSWER:    Objection pending.**

2.      Copies of all statements, of all parties and non-party declarants

concerning the incident alleged in the complaint.

**ANSWER:    Objection pending.**

3.      Copies of any and all photographs, reports, papers, books, documents,

maps, drawing and physical objects made by the defendant or on his behalf by any

person, engineer or expert pertaining to any cause of action contained in the complaint

or any defense to any cause of action contained in the complaint?

**ANSWER:    Objection pending.**

4.      Copies of all disciplinary action taken against Daryel McCrorey by the

Hartford Police Department.

**ANSWER:    Attached hereto.**

5.      Copies of all tape recordings, letters, writings or other correspondence in

the possession, custody or control of the City of Hartford, its employees or agents

regarding and/or pertaining to the subject incident.

**ANSWER:    Objection pending.**

- 7 -

One Goodwin Square
225 Asylum Street
Hartford, CT  06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

6.     Copies of all performance appraisals, reprimands, tape recordings, letters, writings or other correspondence regarding Daryel McCrorey's job performance, including but not limited to his use of time at the Hartford Police Department.

**ANSWER:     Objection pending.**

7.     Copies of all statements, whether written or tape recorded regarding the subject incident given by any witness(es) to the Hartford Police Department or any other person other than your counsel.

**ANSWER:     Objection pending.**

8.     Copies of all statements investigative reports, police reports, letters, memorandum or any other writing regarding misconduct by Officer Daryel McCrorey whether substantiated or not, including but not limited to his loss of a police radio, filing a false report concerning the loss of his police radio and/or alleged sexual assault on a prostitute(s).

**ANSWER:     Objection pending.**

9.     Please provide copies of all policies, procedures, directives, written or oral orders, regarding the filing of false police reports including but not limited to the penalty for filing false reports.

**ANSWER:     Objection pending.**

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

10.    Please provide copies of all directives, policies, orders, directives, procedures and/or other regulations regarding the supervision of officers by supervisory officers while on the job.

**ANSWER:    Objection pending.**


DEFENDANTS:
CITY OF HARTFORD,
ROBERT RUDEWICZ,
JOSEPH CROUGHWELL, AND
JEFFERY FLAHERTY


By_____
Brian P. Leaming of
HALLORAN & SAGE  LLP
Fed. Bar #ct 16075
One Goodwin Square
225 Asylum Street
Hartford, CT  06103
(860) 522-6103

- 9 -

One Goodwin Square
225 Asylum Street
Hartford, CT  06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

## CERTIFICATION

This is to certify that on this 21st day of January, 2002, I hereby mailed a copy of the foregoing to:

Wesley S. Spears, Esq.
53 Russ Street
Hartford, CT 06106-1523

William J. Melley, Esq.
Kenny, Brimmer, Melley & Mahoney
Five Grand Street
Hartford, CT 06106-1505

                                        _____
                                        Brian P. Leaming

224400.1(HS-FP)

05645.0594.ml

One Goodwin Square                HALLORAN          Phone (860) 522-6103
225 Asylum Street                 & SAGE LLP        Fax (860) 548-0006
Hartford, CT  06103                                 Juris No. 26105

## CERTIFICATION

I, Dennis Getek, affirm that I have read the responses to the plaintiff's Interrogatories and Requests for Production, and they are true and correct to the best of my knowledge and belief.

_____

Dennis Getek
on behalf of the City of Hartford

Subscribed and sworn to before me this 19th day of October, 2001.

_____

Notary Public/
Commissioner of the Superior Court

My Commission Expires: